Go ahead, Counselor. Good morning, Your Honors. May it please the Court, Craig Anderson on behalf of Las Vegas Metropolitan Police Department officers DeLaria and Ferrante. This is an appeal from the District Court's failure to properly apply qualified immunity analysis to a Fourth Amendment claim. The District Court found one issue of fact in the record and then disposed or said that there was no reason to grant summary judgment to the two officers in less than one paragraph. The truth of the matter is, is the clearly established law when it comes to qualified immunity is that if there are factual disputes, those factual disputes are removed from the record, the facts to the non-moving party are examined, and the Court then must determine whether a Fourth Amendment violation occurred and or whether the law was clearly established and qualified immunity applies. Here the Court made no attempt to do that. It said that the factual dispute as to whether Hartrim pushed the officers prevented it from conducting that analysis. So what the Court should have done was looked at two issues. One, whether the detention of the officers of Mr. Hartrim was reasonable under the Fourth Amendment or protected by qualified immunity. And then, secondly, whether the eventual citation for obstruction violated the Fourth Amendment or is protected by qualified immunity. If the Court had removed the fact as to whether the officers touched Hartrim or whether Hartrim had touched the officers and examined the other facts that Hartrim admits, it would have had no choice but to conclude that the detention was reasonable and the citation was reasonable. Well, I'm worried about that. Okay. Because if I put the facts as Hartrim suggests them, it seems to me that the officers were justified in initiating the Terry stop, but then the officers used handcuffs. Now, they weren't investigating a violent crime. They had no reason to believe that he was armed or dangerous. So then I go to Johnson and I say, okay, you can only handcuff him if he's uncooperative or took action at the scene that raises a reasonable possibility of danger or flight or they had information that a crime might involve violence was about to occur. So if I take his facts, the officers said, move away from the door, and he did. And incidentally, I think the footage confirms that. One of the officers asks him what he wants. He replies in a normal tone that he wanted to know how the woman got in his room. Then the officer said that was between the hotel and him and not them. And then he raises a voice and says, how did this woman get into my room? And they grab him and handcuff him. Okay. So I'm having a tough time understanding where that automatically says he's uncooperative or that there's a danger of flight or that there's a crime. Okay. Thank you. And so we agree that the initial stages of the Terry stop were probably reasonable. Well, I gave that to you. Yeah, and I appreciate it. I'm trying to get to the point. To the handcuffing. Okay. Because it seems to me that if I age on the handcuffing, he never yells, he never waves his arms, he never makes threatening gestures, he never has any contact with the officers. The best I got, based on what he says, is I ask how that woman got in my room, and that was in a raised voice. Okay. And so, yes. Okay. So what he admits to, okay, based upon his testimony, is that when he instructs the officers or asks the officers, I want to know what's going to happen between the casino and myself, that he, when they tell him that's between the two of them, he admits that he raised his voice. Okay. He admits that at this point things became chaotic and they started happening really fast. He says he assumes he was in close enough contact with the officers, and he does not dispute that his fists were clenched. And indeed, his wife, who's right there in witnesses, says he is agitated, he is upset, he has an intense look on his face, and his fists are clenched. Now, to me, okay. Now, and even given all that, why are we saying then that this is a reasonable possibility of danger or flight, or that a crime might occur? Okay. Because at that point, especially which I think the key issue or the key fact here is the clenched fists. At that point, a reasonable officer, knowing that these things escalate extremely quickly, could be, okay, this thing is going to get out of control. But he's going to say, and this is his idea, even though all of that happened, I was in full control of myself. I didn't have any problem. And this is what I have to look at. What does he say in his allegations? Okay. And what we are looking at, though, is based upon his admissions of fact. Okay. I'm sorry to interrupt, but I'm looking at the depot where he was asked, did you have your fists clenched? And he answered, I don't remember, but it's possible. I don't remember. It could have been an involuntary reaction. I don't know. So I don't hear him actually saying, yes, my fists were clenched. Okay. And if you go to page 55 of his deposition, he says, he does not dispute his hands were clenched. He says he's not disputing that. Okay. And so I think at that point, would a reasonable officer, and what you, Judge Smith, brought up was what he's going to say is in his mind. Well, I'm not trying to say in his mind. I'm looking at the allegations that he makes in his complaint, and what he says is his deal. I looked at the deposition, too. I'm not sure everything you've said is correct about the deposition, and that's why I didn't even question you too much about it. I'm trying to get on these facts. Can I really say the Constitution, that you had the right, your officers, to handcuff you? So when the agitation begins, as he says, he raised his voice. It's chaotic. He says he doesn't dispute he clenched his fists on page 55 of his depo, or he wouldn't dispute that. So if you have someone standing there in that state of emotion, would a reasonable officer on the scene conclude that you're about to confront something that could escalate to where now you're going to move to intermediate force? You know, if he takes a swing at the officer, lunges at the officer, you now may find yourself where you need to use a taser, a baton, pepper spray. So the officers are attempting to diffuse this situation by a less intrusive mean of Because once he is agitated, and he is in their face, and he is raising his voice, isn't it reasonable for an officer to say, I'm going to stop this right now. I'm going to make sure that we don't have to go to intermediate force. I'm going to make sure we don't have to take him to the ground. I'm going to make sure we don't have to go. And isn't that a jury question? Based upon the facts he admits, I would say no, because now what we're looking at is whether a reasonable officer would have known under the state of the law that if someone clenches their fist, is agitated, and is raising their voice towards you, while you're trying to get There's no question the state of the law is, officers may not use highly intrusive measures such as drawing weapons or handcuffing unless the circumstances reasonably justify such extraordinary procedures in order to ensure the officer's safety. Yes. And that's the law. Okay. And so would a reasonable officer conclude if someone is agitated in front of them and begins to clench their fist and raise their voice, that they are in potential danger? The law doesn't say they have to be struck. The law says whether a reasonable officer could perceive those actions as being threatened. What is there beyond clenching a fist? According to him, he raised his voice. He admits that he's in close proximity to the officer, so we know he's right there with him, and that he is agitated. He says, I'm upset, I'm agitated, and all of that is understandable now that we know the facts of the situation. But at the time, those facts are not known. So you have a suspect, for lack of a better term, who's standing there, who's agitated, upset, admittedly raising his voice, and then begins to clench his fist. And would a reasonable officer look at that and say, okay, I need to defuse this. I need to stop this now before I have to go to a higher level of force. Because that's what- And so to defuse it is to grab him and throw handcuffs on him. Yeah, that takes the threat out of the picture. He's now handcuffed, he can't harm the officers. They can now continue on with that investigation. But again, I appreciate your argument to the jury. You haven't got the jury now. You've got somebody who's supposed to be detached and who's supposed to be saying, okay, let's give that person every benefit of the doubt of their allegations. And then, could there be a violation? And based on those allegations, there is a violation. And based on those allegations, Johnson and Washington suggest the officer should have known better. No, I think if you look at the Buffington case- I mean, that's what they're suggesting. Johnson, I mean, if I say Johnson, if I go to Johnson, they can only handcuff Atrum if he took action at the scene that raised the possibility of danger of flight. They had information the crime might involve violence. The police have information the suspect is currently armed, I threw that out. Or the stop closely follows a violent claim, I threw that out. If I take Washington, I just told you what it is. So I don't think the law is unclear. What we're really down to is a determination of fact. Okay, is a weighting of the facts that I have in front of me, which says, go on to trial, let the jury decide. Okay, and there's another Supreme Court case, Michigan versus Summers, on the same issue, okay? Which one of the other prongs it says to consider is whether it's necessary the handcuffing, to facilitate the orderly completion of a search, okay? I've seen that case. Okay, and so there's that other factor in there too. And so we're getting into the ambiguity here. What these officers are doing is attempting to de-escalate the situation. They're trying to avoid, so we're not here talking about a taser deployment, or a baton deployment, or a pepper spray deployment. Where we would be saying, okay, so this guy was agitated, had his fist clenched, and you guys didn't do anything about it? Well, you should have known he was going to start swinging. You should have known this was going to happen. And then they're dealing with that situation. What they're doing here is in a split-second decision, saying, okay, let's calm this down right now. Let's take the least intrusive we can do. And they didn't show up, because in a lot of these cases, you know, it's felony stops, it's pulling people out of cars, where they're all the decision is made by the police to use a pointed weapon, to threaten force before they've even began the investigation. Here, the officers approached him and treated him fairly. You know, they didn't go right in and detain him. They didn't come right in with their guns pointed. They didn't come right in and handcuff him. Well, the honest truth is, if you read what he says, they told him to move. He did. Well, what he said... He moved, and frankly, looking at the security footage, there's no question. He moves right away. I can't even believe the officers when they said what he did, because he moved right away when I looked at the footage. Then they ask him what he wants, and he says, I want to know how that woman got in my room. And then the officer says, well, that's between the hotel and you. That isn't our worry. And then we got the fact. And I'll be fair. I'm kind of like my colleague. I'm a little worried about whether that deposition really says what you say it doesn't. I'm worried that this is still, if I give every intendment to them, a question of fact the jury ought to look at. With respect to the deposition, the raised voice is on page 28, excerpt of the record 118. On that same page, he says it's chaotic and things were happening fast. Whose deposition is this? Mr. Hartram's. The plaintiff's. On page 29, he says he assumes he made contact with the officers. That's page 29, which is excerpt of the record 118. Then on page 31, that's where he says he's not sure if his hands were clenched. But if you go to page 55, he says, I would not dispute that they were. And his wife says they were. And yet, you know, I mean, we can mince words here in the deposition, but when he's talking about raised his voice, he says six on a scale of one to ten. I keep looking for the word chaotic and I can't find it on 28, but it doesn't matter. That's fine. That may have been my interpretation. I apologize if I misrepresented that. You're an advocate. You'll get to say it to the jury if I don't buy your case. I understand. And but, you know, when we get into the qualified immunity section of this handcuffing issue, the question is, is there really clearly established law that it would be unconstitutional to handcuff someone whose fists are clenched, who is agitated and who, you know, it's clear and, you know, we can't look at it with this benefit. Now, just a minute. It isn't a matter. They don't talk about this as handcuffing is the least of things to do. In Washington versus Lambert, handcuffing is a highly intrusive measure. This isn't the least you can do. The least you can do is say, hey, yahoo, calm down and stand over there and quit yapping around. But they call handcuffing highly intrusive. So it isn't, I mean, your argument is, well, that's the least they could do is put some handcuffs on him. But frankly, I don't find the law to say that. Okay. And I think you can distinguish this case fairly easily from the Washington Lambert. That is the traffic stop with the African-American males where Judge Reinhardt has quite a bit of dictum on the role that race played in that stop. That's not surprising. Please don't open the door to this. But I have to go through what Judge Reinhardt says, and I have to get to the reality of what he says here. And here's the difference, is in Washington v. Lambert, they pull the people out of the car at gunpoint without even talking to them, without even taking any steps. So the decision to use the intrusive force, the pulled weapons, the handcuffing, was already made by the officers. These officers first tried officer presence, which is appearance in their uniforms. They then went to verbal. They then attempted to verbally contact him. And it wasn't until he admittedly became agitated about their response that you need to work this out with the hotel, that they said, okay, we need to change our tactics here. This is not working. And if just one thing goes south, you know, if he raises his arm, if he lunges or something, you're in a whole different situation where they would have to use a more intrusive form of force. And I'm not— Thank you. Thank you for your argument. I appreciate your argument, and we understand it. Thank you. But you've gone over, and so we'll move to Mr. Hartram. Good morning, Your Honors. May it please the Court. I'm C.J. Potter. I'm from Las Vegas, Nevada. I represent the appellee, Mr. Hartram. This Court should affirm the district court's denial of qualified immunity because a jury is entitled to determine whether these trainee officers exceeded the scope of Terry when they arrived upon a scene after Mr. Hartram's call that he was the victim of a room invasion. He steps out into the hallway and says, how did this woman get in my room? And then within one minute of the police officers arriving, they chose to grab Hartram, pushed him up against the wall, pointed a taser at him, threw him into the other wall on the other side of the hallway, handcuffed him, and then put him in a police car. And this Court has said on multiple occasions that you can't just look at the self-serving testimony of a police officer. You have to look at the circumstantial evidence that if it's to be believed would discredit their testimony. Well, that's why counsel continues to run us to the deposition and goes through the deposition testimony rather than looking at his client's testimony. So how do you respond to what he says? Here's the guy. He does say he wants to know how the woman gets in his room, and then he's told, well, that's between you and the hotel, and then he gets mad or raises his voice. Let's not put gets mad. Raises his voice and says, how did that woman get in my room? Now, based on this deposition testimony, he may have got a little angry, more angry. He might have even clenched his fists. Does that change our analysis? No, Your Honor, and it's because clenching your fists, it's undisputed that his fists were at his side. He's not bladed up or he's not threatening an officer. His fists are at his side. It's on the video as well, but that's consistent with DeLaria and Ferrante. Both the trainee officers say that his fists are around his stomach or at his side. But raising your voice and clenching your fists doesn't give reasonable suspicion to go hands-on in this situation. That's not obstruction. Complaining about somebody coming into your hotel room, using your personal effects, sleeping in your bed, showering in your room, and being upset about it doesn't give reasonable suspicion. Excuse me. And when you look at all the facts in the plaintiff's, in Mr. Hartram's favor that's required at the summary judgment stating, the disputed facts, first and most importantly, you know, even taking the push out. I mean, that's a dispute that's in the plaintiff's favor that he's claiming there's no physical contact. But as you identified, Judge Smith, on direct or on, I'm sorry, when your appellate was. I tried not to make it seem that way, but go ahead. Mr. Hartram's not in the doorway. You know, in the testimony of the officers, the justification for the obstruction is that, well, we were going to conduct this investigation about this missing person who's now been found. But in the video and in Mr. Hartram's testimony, as well as the neutral Samstown security guard officer's testimony, is that Mr. Hartram leaves his room and lets the officers go in. There's also testimony at that point that both of the Samstown security officers, that Ms. Wolke, who was the Alzheimer's person that Mr. Hartram had called about, was taken to be reunited with her husband at the point that Metro's arriving. So she's out of the picture at that point. So, and I think there's a dispute in the record whether there is any investigation done after this incident. There's not any documents in the record demonstrating that they, that Metro ever conducted an investigation about how she got into the room, whether Mr. Hartram was involved in that in any way. That's something that's created kind of after the fact. As far as I can tell in the record, the only document from Metro is the citation that Mr. Hartram received. And there's some questioning on one of the depositions. I believe it's Officer Ferrante, who's the secondary officer, about a report that Mr. or Officer Della Ria wrote, but it was apparently unclear whether it's that same citation or it's field notes or anything of that nature. I wanted to address, too, just the, with regard to qualified immunity, the well-settled, clearly established nature that even if a Terry stop's justified at its inception, that the police reaction can exceed the scope of that stop. I'd rely upon Washington v. Lambert for that proposition. She talked about that weapons and handcuffs normally aren't part of a Terry stop. You know, it's not an abstract issue of law. What we're dealing with here with regard to it being clearly established is Terry, at the time of this incident, that had been well-settled law for approximately 40 years, even assuming Terry's not. Does the effect of whether that's really a Terry stop or not help your case? Because I gave it away to the, I gave it away to the government. Well. You do challenge whether it's really a valid Terry stop, don't you? Certainly. But even assuming if it is valid at its inception. Does the fact that it may not be, does that help your case at all? I think it does. And I think that's the same. Why? Because what's happening here, Metro's framing it as we had to de-escalate the situation. We had to handcuff this person. And I think that's very troubling, saying to the government that if somebody upset complaining about a civil dispute is that you have to go hands-on. And so it's a troubling proposition. And in terms of our case, you know, that's the first step of analysis, Terry, along the continuum of the Fourth Amendment. You know, you get to the probable cause. You get to the excessive force later on. But here there's no reason to even. If it were a Terry stop, you would still be arguing they did too much in handcuffing, wouldn't you? Can you. Even if it were a Terry stop, you'd still be arguing it's excessive to handcuff. Absolutely. Because there's a situation, and that's my whole point of why I'm raising my voice here. Clenching your fist and raising your voice, it doesn't arise to reasonable suspicion. Therefore, it certainly doesn't arise to probable cause of obstruction or the need to use any force. And, you know, here there's also testimony from the neutral witness that a taser was pulled out and pointed at him. And the value of the video, another point I wanted to make, is that this all happens within a minute. Metro arrives on the scene, and, you know, it's very quickly the 66-year-old gentleman who's in shower shoes after his senior citizen softball tournament is thrown up against a wall, thrown against the other wall, had a taser pointed at him, and is handcuffed and taken outside. I think we heard that before. Just out of – I know this has nothing to do with the price of eggs, but did we ever find out how she got into the room? Yes. The testimony from the Samson Security Officers is that she had Alzheimer's. She's in the video. Early in the video, she's seen walking in the hallway, and housekeeping lets her into the room. And that's how she got in there. I don't have any other – you have more points to make? No, thank you, Your Honor. Do you have any other questions? No, thank you. All right. Thank you. I think we've heard your argument. I think we know what it is. I think we'll submit. 1315396 is submitted. We thank counsel for making your argument in a very interesting case. And court is adjourned. Court is even in recess. We're finished. Thank you.
judges: Gleason, Schroeder, Smith